UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KENDY DUVINE,<br><br>      Petitioner,<br><br> v.<br><br>LAURA HERMOSILLO, et al.,<br><br>      Respondents. | Case No. C25-2583-SKV<br><br>ORDER ON WRIT OF HABEAS CORPUS |

## I. INTRODUCTION

Petitioner Kendy Duvine, who is detained at the Northwest ICE Processing Center (NWIPC), brings this 28 U.S.C. § 2241 immigration habeas action through counsel. Petitioner asserts his prolonged detention without a bond hearing violates the Due Process Clause of the Fifth Amendment to the United States Constitution. Dkt. 1. Petitioner names the following Respondents: Laura Hermosillo, Acting Field Office Director of Enforcement and Removal Operations, Seattle Field Office, U.S. Immigration and Customs Enforcement (ICE); Kristi Noem, Secretary, U.S. Department of Homeland Security (DHS); Pamela Bondi, U.S. Attorney General; and Bruce Scott, Warden of NWIPC. Respondents, in a return to the petition, argue Petitioner's continued detention without a court-ordered bond hearing does not violate due process. Dkt. 8. Having considered the habeas petition, the return, Petitioner's traverse, Dkt. 13,

and the relevant record, the Court herein GRANTS the petition and ORDERS Respondents to provide Petitioner with a bond hearing within fourteen days of the date of this Order.

## II.   BACKGROUND

Petitioner is a noncitizen from Haiti. Dkt. 3, ¶¶2, 4. Petitioner fled Haiti seeking asylum, based on a fear of persecution after he was threatened, kidnapped, and beaten for speaking out against a corrupt politician. *Id*., ¶3.

On November 21, 2022, Petitioner entered the United States and was taken into custody by U.S. Customs and Border Patrol. *Id*., ¶4; Dkt. 9, ¶4; Dkt. 10, Ex. A. Shortly thereafter, he was released on his own recognizance pending a credible fear interview by U.S. Citizenship and Immigration Services (USCIS). Dkt. 9, ¶5. Petitioner filed an application for asylum with USCIS on May 25, 2023. *Id*., ¶5.

On or about February 14, 2025, Petitioner was arrested following a vehicle collision in Miami, Florida. Dkt. 3, ¶5. Petitioner's vehicle hit another vehicle when he changed lanes, but he continued driving, believing he had hit a curb. *Id*. He was later arrested for leaving the scene of an accident. *Id*. On or about May 29, 2025, the criminal charges against Petitioner were dropped, he was released from pre-trial criminal custody, and he was immediately taken into custody by ICE. *Id*., ¶¶5-6; Dkt. 9, ¶¶7-8. ICE initially detained Petitioner at a facility in Texas and, on June 2, 2025, transferred Petitioner to NWIPC. Dkt. 3, ¶6; Dkt. 9, ¶¶8, 10.

Petitioner filed his habeas petition with this Court on December 16, 2025. Dkt. 1. As of that filing, he had not received a hearing or a notice placing him in removal proceedings. Dkt. 3, ¶6. On December 17, 2025, ICE placed Petitioner in full removal proceedings in lieu of expedited removal by issuing a Notice to Appear on Form I-862, charging him as removable under Immigration Nationality Act (INA) § 212 (a)(7)(A)(i). Dkt. 9, ¶15; Dkt. 10, Ex. F.

ORDER ON WRIT OF HABEAS CORPUS - 2

Petitioner was scheduled to appear before an immigration judge (IJ) for an initial master calendar hearing (MCH) on January 8, 2026. Dkt. 9, ¶16; Dkt. 10, Ex. F.

### III. STATUTORY FRAMEWORK AND LEGAL STANDARDS

Petitioner is detained pursuant to 8 U.S.C. § 1225(b). *See* Dkt. 8 at 6; *see also* Dkt. 1 at 13. Noncitizens are considered "applicants for admission" to the United States when they "arrive" in the United States or are "present" in this country but have "not been admitted." 8 U.S.C. § 1225(a)(1). "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) applies to noncitizens who are "initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Id*. (citing § 1225(b)(1)(A)(i)). Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id*.

"Normally, noncitizens covered by § 1225(b)(1) are subject to an expedited removal process that does not include a hearing before an IJ or review of the removal order." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111-12 (W.D. Wash. 2019) (citing 8 U.S.C. § 1225(b)(1)(A)(i)). However, where a noncitizen "indicates either an intention to apply for asylum . . . or a fear of persecution," they must be referred for an interview with an asylum officer. *Id*. (quoting 8 U.S.C. § 1225(b)(1)(A)(ii); citing 8 C.F.R. § 208.30(d)). If the officer finds a credible fear of persecution, the noncitizen "shall be detained for further consideration of the application for asylum." *Id*. (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Both § 1225(b)(1) and § 1225(b)(2) mandate detention of noncitizens for the entirety of the applicable proceedings. *Jennings*, 583 U.S. at 302. And the "statute does not impose 'any limit on the length of detention' pending a decision on the asylum application and does not

authorize bond hearings or release on bond." *Banda*, 385 F. Supp. 3d at 1112 (quoting *Jennings*, 583 U.S. at 296). However, both the Supreme Court and Ninth Circuit have "grappled . . . with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015) (quoted source omitted) (discussing, *inter alia*, *Zadvydas v. Davis*, 533 U.S. 678 (2001), *Demore v. Kim*, 538 U.S. 510 (2003), and *Tijani v. Willis*, 430 F.3d 1241 (9th Cir. 2005))*, rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). *See also Toktosunov v. Wamsley*, C25-1724-TL, 2025 WL 3492858, at *2-4 (W.D. Wash. Dec. 5, 2025) (discussing case law).

Most recently, in *Jennings*, the Supreme Court held that § 1225(b) "unambiguously authorizes detention pending resolution of removal proceedings and does not plausibly suggest a 6-month limitation or periodic bond hearings." *Banda*, 385 F. Supp. 3d at 1115 (citing *Jennings*, 583 U.S. at 297, 303). While *Jennings* declined to address whether the Constitution places limits on prolonged detention under the INA, *see* 583 U.S. at 312, the Ninth Circuit post-*Jennings* expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." *Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018). Moreover, "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will – at some point – violate the right to due process." *Maliwat v. Scott*, C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

ORDER ON WRIT OF HABEAS CORPUS - 4

Neither the Supreme Court, nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *See Banda*, 385 F. Supp. 3d at 1106. This Court applies the "*Banda*" test in determining whether a noncitizen's detention under § 1225(b) violates due process. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *3; *Hong v. Mayorkas*, C20-1784-LK, 2022 WL 1078627, at *4-5 (W.D. Wash. Apr. 11, 2022). In *Banda*, the Court found "unreasonably prolonged detention under § 1225(b) without a bond hearing violates due process." *Banda*, 385 F. Supp. 3d at 1106, 1117. The Court declined to adopt a rule that detention became unreasonably prolonged at six months, explaining that, pursuant to *Zadvydas*, "at six months, the burden is on the detainee – not the government – to establish a basis for release[,]" and found such a rule would be "inconsistent with the fact-dependent nature of the constitutional question before the Court, namely whether petitioner's prolonged detention has become unreasonable." *Id*. at 1117 (citing *Zadvydas*, 533 U.S. at 701). The Court, instead, adopted a multi-factor test to apply in making the determination of whether § 1225(b) detention has become unreasonable, considering: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Id*. at 1106 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858-59 (D. Minn. 2019)).

IV.   DISCUSSION

Respondents acknowledge this Court's utilization of the *Banda* test, *see* Dkt. 8, and the Court herein applies that test in determining whether Petitioner's continued detention without a bond hearing is justified. The Court thereafter considers the relief requested by Petitioner.

A.  The Banda Factors

    1.  *Length of Detention*

The first factor, the length of detention to date, is the most important one. *Banda*, 285 F. Supp. 3d at 1118. "The longer mandatory detention continues . . . the harder it is to justify." *Murillo-Chavez v. Garland*, C22-0303-LK-MLP, 2022 WL 16555994, at *5 (W.D. Wash. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 16553176 (W.D. Wash. Oct. 31, 2022) (citing cases).

As of the date of this Order, Petitioner has been detained by ICE for over seven months. *See* Dkt. 3, ¶6; Dkt. 9, ¶8. This period of detention has not yet reached the length of what this Court typically finds unreasonable. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *4 (citing cases finding periods of detention ranging from eleven to thirty months to favor the detainee; finding same for a petitioner detained for nearly twelve months). *See also Toktosunov*, 2025 WL 3492858, at *4 (finding sixteen months of detention favored detainee); *Banda*, 385 F. Supp. at 1118-19 (finding approximate seventeen-month detention strongly favored detainee). It has, however, exceeded six months and is approaching a period of detention the Court would find hard to justify. The Court therefore finds the first *Banda* factor neutral or weighing slightly in Petitioner's favor. *See Odimara v. Bostock*, C24-0572-JHC-GJL, 2024 WL 3862256, at *6 (W.D. Wash. July 12, 2024) (considering detention pursuant to 8 U.S.C. § 1226(c) and finding: "Petitioner was detained for four months at the time he filed his Petition, and his detention has now extended to approximately six months. Because Petitioner's current detention has reached—but not yet exceeded—the brief period of detention upheld in *Demore*, this first factor is neutral or, at most, weighs slightly in favor of granting a bond hearing."), *report and recommendation adopted*, 2024 WL 3859703 (W.D. Wash. Aug. 19, 2024).

### 2. *Likely Duration of Future Detention*

The second factor considers how long the detention is likely to continue absent judicial intervention. In the petition, Petitioner observed that he had not been placed in removal proceedings or received even an initial MCH, that it would likely take at least several months beyond a MCH to receive a decision on his asylum application, and that, if he is ordered removed, an appeal with the Board of Immigration Appeals (BIA) and potential Ninth Circuit petition would add many additional months, if not years, of adjudication. Respondents note the hearing scheduled for January 8, 2026, and argue that any length of future detention is no more than speculative at this early stage in the proceedings. *See Maliwat*, 2025 WL 2256711, at *5 (declining to speculate as to likely duration of future detention and finding this factor neutral because petitioner's case was still before an IJ and no appeal had been filed). Petitioner, in response, notes that an IJ has not yet set a schedule for him to even file his asylum application. *Cf. Cardozo v. Bostock*, C25-0871-TMC-BAT, 2025 WL 2597521, at *6 (W.D. Wash. July 29, 2025) ("As to the second *Banda* factor Respondents have not indicated that absent judicial intervention, Petitioners will ever be afforded a bond hearing. The second factor thus favor Petitioner."), *report and recommendation adopted in part, rejected in part on other grounds*, 2025 WL 2592275 (W.D. Wash. Sept. 8, 2025).

As Respondents observe, courts typically find this factor neutral where proceedings are in early stages. *See Maliwat*, 2025 WL 2256711, at *5 (distinguishing cases where courts have found the length of an appeal favored a petitioner as cases in which appeals had already been filed); *Rahman v. Garland*, C24-2132-JHC-TLF, 2025 WL 1920341, at *4 (W.D. Wash. June 26, 2025) (declining to speculate as to likely duration of future detention and finding this factor neutral where respondent indicated he was in the process of obtaining a travel document for

petitioner and it was not clear how long that process would take), *report and recommendation adopted sub nom. Anisur R. v. Garland*, 2025 WL 1919252 (W.D. Wash. July 11, 2025); *Doe v. Bostock*, C24-0326-JLR-SKV, 2024 WL 3291033, at *10 (W.D. Wash. Mar. 29, 2024) (finding same where IJ had held two hearings and only recently continued the case to take additional testimony and it was unknown whether removal proceedings would end in petitioner's release or further proceedings), *report and recommendation adopted*, 2024 WL 2861675 (W.D. Wash. June 6, 2024). Accordingly, given the early stage of the proceedings in this matter, the Court declines to speculate as to the likely duration of future detention and finds this factor neutral.

       3.    *Conditions of Detention*

Under the third factor, the Court considers the conditions of Petitioner's detention at the facility where he is currently detained. "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. at 1119 (quoted source omitted).

Petitioner asserts that the conditions at NWIPC are punitive and restrictive and that, for all intents and purposes, NWIPC is a prison. He provides a declaration describing, *inter alia*, his difficulty sleeping because the lights in his room are kept on at night, the fact that he receives only thirty minutes to one hour of recreation three times a week and is otherwise not allowed to go outside, limitations in his access to basic hygiene and visitation, and the impact of his ongoing detention on his health and wellbeing. Dkt. 3, ¶¶8-10. He also points to reports by independent outside entities documenting problems with food, medical neglect, cleanliness, and other issues at NWIPC. *See* Dkt. 1, ¶44.

Respondents do not contest Petitioner's showing as to the conditions of detention. They state only that Petitioner is detained at NWIPC. *See* Dkt. 8 at 9.

This Court has found that conditions at NWIPC are "similar . . . to those in many prisons and jails." *Maliwat*, 2025 WL 2256711, at *6 (citing *Doe*, 2024 WL 3291033, at *11; *Rahman*, 2025 WL 1920341, at *4). Because Petitioner provides evidence supporting the similarity between the conditions at NWIPC and the conditions of criminal incarceration, the Court here finds the third *Banda* factor to weigh in Petitioner's favor. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *5; *Maliwat*, 2025 WL 2256711, at *6.

4.  *Delays in the Removal Proceedings Caused by Detainee*

The fourth factor considers delays in the removal proceedings caused by the detainee. Petitioner here asserts and Respondents concede that Petitioner has not caused any delay. As such, this factor also weighs in Petitioner's favor. *See, e.g., Amhirra v. Warden*, C25-1376-TL, 2025 WL 3718994, at *7 (W.D. Wash. Dec. 23, 2025); *Banda*, 385 F. Supp. at 1119-20.

5.  *Delays in the Removal Proceedings Caused by Respondents*

The fifth factor "considers the nature and extent of any delays in the removal proceedings caused by the government." *Banda*, 385 F. Supp. at 1120. "If immigration officials have caused delay, it weighs in favor of finding continued detention unreasonable." *Maliwat*, 2025 WL 2256711, at *6 (quoting *Doe*, 2024 WL 3291033, at *12). "Continued detention will also appear more unreasonable when the delay in the proceedings was caused by the immigration court or other non-ICE government officials." *Id*.

Petitioner asserts that Respondents caused significant delay by failing to place him in removal proceedings during the more than six months he was in detention prior to the filing of his habeas petition. Respondents argue this factor should be neutral because ICE repeatedly followed up with USCIS concerning a credible fear interview for Petitioner and ultimately exercised its statutory discretion to place Petitioner into Section 1229a proceedings rather than

prolong expedited removal processing. In a declaration, an ICE deportation officer attests that ICE officials contacted USCIS concerning the status of Petitioner's credible fear interview on June 2, 2025, gave Petitioner's case file to USCIS on July 9, 2025, and again contacted USCIS on August 11, 2025, that USCIS requested additional documents from ICE on August 11 and 22, 2025, and that ICE sent documents to USCIS on October 20, 2025. Dkt. 9, ¶¶9-14.

Petitioner, in response, asserts that this argument ignores the fact that DHS is a Respondent in this case and ultimately responsible for ensuring its subagencies – including both ICE and USCIS – fulfill its statutory obligations, including performing credible fear interviews as required by 8 U.S.C. § 1225(b)(1)(A)(ii). Petitioner also rejects the suggestion that ICE fulfilled its obligations and demonstrated good faith by initiating Section 1229a proceedings, given that ICE was required, under *Padilla v. ICE*, C18-0298-MJP, Dkts. 215-2 & 225, to provide Petitioner a credible fear determination within sixty days of his request for asylum or assertion of fear and, in case of further delay, to transfer him to removal proceedings.

Respondents here provide an explanation for the delay in the removal proceedings, but do not deny they caused the delay or provide any justification to deem this factor neutral. As noted above, delay caused by immigration officials "weighs in favor of finding continued detention unreasonable." *Maliwat*, 2025 WL 2256711, at *6 (quoting *Doe*, 2024 WL 3291033, at *12). This remains true regardless of which specific governmental entity caused the delay. *See Banda*, 385 F. Supp. at 1120 (rejecting government's attempt to place blame for difficulties securing an interpreter on a different agency because "regardless of which agency caused the delay, it is attributable to the Government, not petitioner."). This factor thus favors Petitioner.

///

///

*Likelihood Removal Proceedings Will Result in Final Order of Removal*

The Court, finally, considers "the likelihood that the final proceedings will culminate in a final order of removal." *Id*. at 1120 (quoted source omitted). The Court, in other words, considers whether the petitioner has asserted any defenses to removal. *Id*. "Where a noncitizen has not asserted any grounds for relief from removal, presumably the noncitizen will be removed from the United States, and continued detention will at least marginally serve the purpose of detention, namely assuring the noncitizen is removed as ordered." *Id*. (cited source omitted). "But where a noncitizen has asserted a good faith challenge to removal, 'the categorical nature of the detention will become increasingly unreasonable.'" *Id*. (quoted source omitted).

Petitioner asserts his demonstration of a bona fide defense to removal based on the harm he is likely to face in Haiti and points to his timely asylum application, pending since it was filed in May 2023. *See* Dkt. 9, ¶6. Respondents assert that this factor is speculative and therefore neutral.

Courts typically, on consideration of similar records, find this final factor neutral. *See, e.g., Maliwat*, 2025 WL 2256711, at *8 ("Maliwat has identified several good-faith challenges to his removability, and to the Court's knowledge, the IJ still has not ruled on Maliwat's petitions. A ruling on the likelihood of a final order of removal would be speculative.") (internal citation to record omitted). *Cf. Toktosunov*, 2025 WL 3492858, at *5-6 (finding this factor weighed in petitioner's favor where he not only asserted a valid defense, but also prevailed before an IJ and was awaiting a determination on Respondents' appeal of the IJ's grant of asylum). Here, while Petitioner identifies a good-faith defense to his removability, the Court lacks sufficient information to make a prediction as to the likelihood removal proceedings will result in a final

order of removal and a ruling would therefore be no more than speculative.  The Court thus finds the sixth and final factor neutral.

       7.     *Weighing the Factors*

In sum, three factors (conditions of detention, delays caused by Petitioner, and delays caused by the government) clearly weigh in Petitioner's favor, two factors (likely duration of future detention and likelihood removal proceedings will result in final order of removal) are neutral, and one – and the most important – factor (length of detention) is neutral or weighs slightly in Petitioner's favor.  No factors weigh in Respondents' favor.  The Court therefore concludes that the *Banda* test, on balance, favors Petitioner, that his continued detention under § 1225(b) has become unreasonable, and that due process requires that he be provided a bond hearing.  *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *8-9 (finding same where two factors, including length of detention, clearly favored petitioner, the two factors considering delay were either neutral or slightly favored petitioner, and the final two factors were neutral; noting that cases finding a petitioner not entitled to a bond hearing "often find that several factors weigh in favor of the government or that more factors are neutral and favor the government than favor the petitioner."); *Banda*, 385 F. Supp. 3d at 1120 (finding same where four factors weighed in petitioner's favor and two were neutral).

B.     <u>Appropriate Relief</u>

Having found Petitioner's continued detention unreasonable, the Court turns to the relief requested.  Petitioner requests that the Court issue a writ of habeas corpus and order his release unless Respondents hold a custody hearing before an IJ within fourteen days.  Dkt. 1 at 17.  Petitioner requests that, at the hearing, the government be required to establish by clear and convincing evidence that Petitioner presents a risk of flight or danger and that no alternative to

detention could mitigate any risk that his release would present. *Id.* Petitioner further requests that, if Respondents cannot meet their burden, the IJ must order Petitioner's release on appropriate conditions of supervision, taking into account his ability to pay a bond. *Id.* In the alternative to a hearing before an IJ, Petitioner requests that this Court hold a bond hearing. *Id.* Petitioner, in addition, requests that the Court issue a declaration that Petitioner's prolonged detention without a hearing violates the Due Process Clause of the Fifth Amendment and award attorney's fees and costs. *Id.*

The Court, consistent with the practice of this District, will order that a bond hearing be held before an IJ within fourteen days of this Order. *See, e.g.*, *Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. Also, and as this Court has previously recognized, Respondents are properly held to a clear and convincing standard of proof at that hearing, *see Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011), and, if they fail to meet that burden, Petitioner's financial circumstances and alternative release conditions must be considered. *See, e.g., Toktosunov*, 2025 WL 3492858, at *6; *Maliwat*, 2025 WL 2256711, at *10. The Court will also herein declare that Petitioner's prolonged detention under § 1225(b) violates the Due Process Clause of the Fifth Amendment. *See Toktosunov*, 2025 WL 3492858, at *7; *Cardozo*, 2025 WL 2592275, at *2. The Court, finally, observes that Petitioner's request for attorney fees must be set forth in a fee petition pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412.

### V.    CONCLUSION

For the reasons set forth above, Petitioner's petition for writ of habeas corpus, Dkt. 1, is GRANTED and Respondents' request that the Court deny the petition, Dkt. 8, is DENIED. The

/ / /

/ / /

Court hereby FINDS and ORDERS as follows:

(1) Petitioner's prolonged detention under § 1225(b) without a bond hearing violates the Due Process Clause of the Fifth Amendment.

(2) Within **fourteen (14) days** of the date of this Order, Respondents shall provide Petitioner an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011).

(2) Any fee petition shall be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412.

Dated this 9th day of January, 2026.

S. KATE VAUGHAN
United States Magistrate Judge